APPEAL NO: 13-2467

_____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

_____

CRESCOM BANK, SUCCESSOR BY MERGER TO
COMMUNITY FIRSTBANK,

>Plaintiff-Appellee,

v.

EDWARD L. TERRY,

>Defendant-Appellant,

and

HARRIS STREET, LLC, N/K/A CCT RESERVE, LLC;
SUGARLOAF MARKETPLACE, LLC; and CCT RESERVE,
LLC

>Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION
THE HONORABLE PATRICK M. DUFFY

_____

# REPLY BRIEF OF APPELLANT

_____

> Richard S. Rosen, Esquire
> Daniel F. Blanchard, III, Esquire
> ROSEN, ROSEN & HAGOOD, LLC
> 151 Meeting Street, Suite 400
> Charleston, SC 29401
> (843) 577-6726 telephone
> ATTORNEYS FOR DEFENDANT-
> APPELLANT EDWARD L. TERRY

# **TABLE OF CONTENTS**

Table of Authorities ................................................... ii

Introduction ...........................................................1

Argument................................................................1

    I.    CRESCOM FAILED TO PROVIDE TERRY WRITTEN NOTICE OF DEFAULT AND AN OPPORTUNITY TO CURE THE ALLEGED DEFAULT IN STRICT ADHERENCE TO THE CONTRACT TERMS ............................................................1

    II.   TERRY IS AN INTENDED THIRD PARTY BENEFICIARY OF THE NOTICE OF DEFAULT PROVISION ...............................................11

    III.  THE DISTRICT COURT IMPROPERLY ENTERED SUMMARY JUDGMENT IN CRESCOM'S FAVOR WITH RESPECT TO DAMAGES BECAUSE THE EVIDENCE SHOWED THAT THE DEBT WAS SATISFIED IN FULL WHEN CCT CONVEYED COLLATERAL TO CRESCOM PURSUANT TO ITS BANKRUPTCY PLAN ...............................................................13

    IV.  AS A PARTY TO THE PRIOR BANKRUPTCY PROCEEDINGS, CRESCOM IS BOUND BY THE BANKRUPTCY COURT'S UNAPPEALED FINDING INVOLVING THE UNSATISFIED AMOUNT OF CRESCOM'S CLAIM ...............................................17

    V.   CRESCOM IS PROHIBITED FROM RECOVERING THE "DEFAULT" RATE OF INTEREST OR LATE FEES ....................20

Conclusion.............................................................24

Certificate of Compliance ..............................................

Certificate of Service..................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Abecassis v. Eugene M. Cummings, P.C.,*
2010 WL 9452252 (S.D. Fla. June 3, 2010),
*aff'd*, 467 F. App'x 809 (11th Cir. 2012) ...................................................................8

*Alimenta Processing Corp. v. S. Georgia Pecan Co.*,
364 S.E.2d 84 (Ga. Ct. App. 1987) ..............................................................6

*Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*,
222 F.3d 895 (11th Cir. 2000) ........................................................ 6-8, 11

*Art Country Squire, L.L.C. v. Inland Mortgage Corp.*,
745 N.E.2d 885 (Ind. Ct. App. 2001) ..........................................................23

*Asplundh Tree Expert Co. v. Emeritis LLC*,
2006 WL 1794744 (N.D. Ga. June 27, 2006) .......................................................11

*Atkinson v. Cook*,
518 S.E.2d 413 (Ga. 1999) .........................................................6

*Beal Bank S.S.B. v. Krock*,
201 F.3d 426 (1st Cir. 2000) .................................................22

*Buffalo Ins. Co. v. Star Photo Finishing Co.*,
172 S.E.2d 159 (Ga. Ct. App. 1969) .........................................................6

*Columbus Container, Inc. v. Logility Inc.*,
2002 WL 449790 (S.D. Ind. Feb. 7, 2002) .......................................................6, 10

*Corbin v. Gulf Ins. Co.*,
187 S.E.2d 312 (Ga. Ct. App. 1972) .........................................................10

*Cumrine v. IPG, Inc.*,
367 S.E.2d 581 (Ga. Ct. App. 1988) .........................................................5

ii

*Eckert Realty Corp. v. Eckert*,
941 So. 2d 426 (Fla. Dist. Ct. App. 4th Dist. 2006) ................................22

*Fitchett v. County of Horry*,
2011 WL 4435756 (D.S.C. 2011) ...........................................................12

*Fleet Bank of Massachusetts, N.A. v. One-O-Six Realty, Inc.*,
1995 WL 389862 (Mass. Super. Jan. 17, 1995) ......................................23

*Ford v. Staats*,
1998 WL 1184108 (Mass. Super. Feb. 17, 1998) ...................................23

*Ford Motor Credit Co. v. Sullivan*,
318 S.E.2d 188 (Ga. Ct. App. 1984) .........................................................2

*Fulstone v. Fulstone*,
2005 WL 2211268 (Cal. Ct. App. 2005) ................................................15

*Garcia v. Canan*,
851 F. Supp. 327, 328 (N.D. Ill. 1994) ..................................................23

*Heath v. Y.S. Mortgage, LLC*,
2006 WL 488642 (S.D. Ill. Feb. 28, 2006) ............................................23

*Hermitage Indus. v. Schwerman Trucking Co.*,
814 F. Supp. 484 (D.S.C. 1993) .............................................................12

*Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*,
2012 WL 1078886 (E.D.N.Y. Mar. 30, 2012) .......................................23

*Hupman v. Cook*,
640 F.2d 497 (4th Cir. 1981) .................................................................12

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...................................................18

*In re Airadigm Commc'ns, Inc.*,
519 F.3d 640 (7th Cir. 2008) .................................................................18

iii

*In re Buckhead Oil Co., Inc.*,
454 B.R. 242 (Bankr. N.D. Ga. 2011) ....................................................13

*In re Chateaugay Corp.*,
167 B.R. 776 (S.D.N.Y. 1994) .............................................................18

*In re Colony Square Co.*,
843 F.2d 479 (11th Cir. 1988) ...............................................................6

*In re Crystal Properties, Ltd., L.P.*,
268 F.3d 743 (9th Cir. 2001) ..............................................................22

*In re Digital Impact, Inc.*,
223 B.R. 1 (Bankr. N.D. Okla. 1998) ....................................................18

*In re Lichtin/Wade, LLC*,
2012 WL 3260287 (Bankr. E.D.N.C. Aug. 8, 2012) ..............................22

*In re Mkt. Ctr. E. Retail Prop., Inc.*,
433 B.R. 335 (Bankr. D.N.M. 2010) ....................................................23

*In re Park Forest Dev. Corp.*,
197 B.R. 388 (Bankr. N.D. Ga. 1996) ...................................................19

*In re Potts*,
2013 WL 5508429 (Bankr. D. Colo. Oct. 3, 2013) ...............................22

*In re Rosewood at Providence, LLC*,
470 B.R. 619 (Bankr. M.D. Ga. 2011) ..................................................19

*In re Transit Grp., Inc.*,
286 B.R. 811 (Bankr. M.D. Fla. 2002) ..................................................18

*In re Under Seal*,
2014 WL 1465749 (4th Cir. Apr. 16, 2014) ..........................................14

*JCC Dev. Corp. v. Levy*,
146 Cal. Rptr. 3d 635 (Cal. Ct. App. 2012) ..........................................22

iv

*Martin v. Clemson University*,
654 F.Supp.2d 410 (D.S.C. 2009) ........................................................12

*Matter of Timberline Prop. Dev., Inc.*,
136 B.R. 382 (Bankr. D.N.J. 1992) .....................................................23

*McGee v. Patterson*,
2013 WL 3658821 (Ga. Ct. App. July 16, 2013) ....................................5

*Menke v. First Nat. Bank of Atlanta*,
309 S.E.2d 835 (Ga. Ct. App. 1983) .....................................................9

*Milevoj v. Milevoj*,
201 A.D.2d 267 (N.Y. App. Div. 1994) ................................................15

*Muth v. United States,*
1 F.3d 246 (4th Cir. 1993) ..................................................................14

*Orkin Exterminating Co. v. Stevens*,
203 S.E.2d 587 (Ga. Ct. App. 1973) ..............................................6, 10

*Pillar Dev., Inc. v. Fuqua Const. Co., Inc.*,
645 S.E.2d 64 (Ga. Ct. App. 2007) .....................................................10

*PlayNation Play Sys., Inc. v. Jackson*,
718 S.E.2d 568 (Ga. Ct. App. 2011) ....................................................2

*Poseidon Dev., Inc. v. Woodland Lane Estates, LLC*,
62 Cal. Rptr. 3d 59 (Cal. Ct. App. 2007) .............................................23

*Recanzone v. Nevada Tax Commission*,
550 P.2d 401 (Nev. 1976) ..................................................................15

*Roland v. Shelton*,
127 S.E.2d 497 (Ga. Ct. App. 1962) ...................................................10

*Solitron Devices, Inc. v. Honeywell, Inc.*,
842 F.2d 274 (11th Cir.1998) ............................................................11

*Southeastern Land Fund v. Real Estate World,*
227 S.E.2d 340 (Ga. 1976) ...................................................................23

*Trustco Bank New York v. 37 Clark St., Inc.,*
599 N.Y.S.2d 404 (N.Y. Sup. Ct. 1993) ...............................................23

*VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC,*
2014 WL 169940 (4th Cir. Jan. 16, 2014) ............................................17

*Weaver v. Texas Capital Bank N.A.,*
2010 WL 3119397 (N.D. Tex. Aug. 5, 2010) ........................................19

*W.T. Rawleigh Med. Co. v. Burney*,
102 S.E. 358 (Ga. Ct. App. 1920) ...........................................................9

*Youmans v. Prudential Ins. Co. of Am.,*
977 F.2d 575 (4th Cir. 1992) ...........................................................12-13

Statutes and Rules

11 U.S.C. § 524(e) ..................................................................................18

11 U.S.C. § 1141 ....................................................................................17

GA. CODE ANN. § 10-7-1 ........................................................................2

## INTRODUCTION

CresCom Bank (CresCom) fails to directly confront the majority of Edward Terry's (Terry) arguments stated in his Opening Brief of Appellant (hereinafter "Terry's Brief"). Instead, CresCom makes only cursory and conclusory assertions devoid of any meaningful analysis. CresCom's brief fails to justify the entry of summary judgment in its favor. This Court should reverse the district court's Order.

## ARGUMENT

### I. CRESCOM FAILED TO PROVIDE TERRY WRITTEN NOTICE OF DEFAULT AND AN OPPORTUNITY TO CURE THE ALLEGED DEFAULT IN STRICT ADHERENCE TO THE CONTRACT TERMS.

The record contradicts CresCom's claim that Terry is "not a party" to the contracts requiring notice of default and an opportunity to cure any alleged default. *See* CresCom Opening Brief p. 25.

On June 19, 2009, CresCom, Terry, and CCT Reserve, LLC (CCT)[1] executed a commitment letter for CresCom to make a new loan to CCT. (JA 265). Under the commitment letter, CresCom agreed to extend an additional $750,000.00 line of credit to CCT and Terry agreed to amend three prior loans to CCT, which Terry had guaranteed. Terry signed the commitment letter as CCT's authorized agent *and signed it individually as guarantor of all of the loans*. (JA 270). The commitment letter,

---

[1] Because of mergers, CCT includes the entities known as CCT Reserve, LLC; Harris Street, LLC; and Sugarloaf Marketplace, LLC. (JA 154 ¶5-6).

which CresCom drafted, defines the term "borrower" to include "any person named as an endorser, grantor or surety" in connection with the loans, *which included Terry*. (JA 265 ¶1).[2]  It includes provisions stating that all of the loan documents would be amended to include a cross-collateralization and cross-default requirement, to provide in the event of a payment default on any of the loans that CresCom "at its option and ten (10) days written notice may declare all of the loans in default,"[3] and to provide that the commitment letter, "once accepted, shall survive the loan closing and become binding together with all other loan documents." (JA 265-70 ¶¶1, 9, 26).

On or about June 26, 2009, CresCom, CCT, and Terry executed an addendum to the commitment letter. (JA 272*).* Terry signed the addendum on CCT's behalf *and signed it individually as guarantor of all of the loans*. (JA 273).  The addendum, which CresCom drafted, includes the following provisions:

> WHEREAS, **the Borrowers and the Guarantor accepted and agreed to the terms and conditions of the Commitment Letter issued by [CresCom] dated June 19, 2009**; and

---

[2] There is no distinction between a surety and a guaranty under Georgia law. GA. CODE ANN. § 10-7-1; *Ford Motor Credit Co. v. Sullivan*, 318 S.E.2d 188, 189-90 (Ga. Ct. App. 1984); *PlayNation Play Sys., Inc. v. Jackson*, 718 S.E.2d 568, 569 (Ga. Ct. App. 2011).

[3] Because CresCom imposed a new cross-default and cross-collateralization provision as part of the new loan, Terry specifically negotiated the notice of default provision into the agreements with CresCom for the purpose of ensuring that he was given advance notice of a default under the loan documents and an opportunity to cure same before CresCom sought to cross-default the loans and foreclose on all of the properties. (JA 162-63 ¶ 33; 266 ¶9).

WHEREAS, the Parties hereto desire to add additional terms and conditions to the June 19, 2009 Commitment Letter and the same are set out hereinbelow;

NOW THEREFORE . . . the Parties hereby agree to amend the Commitment Letter dated June 19, 2009, as follows:

. . . .

**4.    Bank agrees to amend the definition of "events of default" as described in the loan documents in all of the loans described in the Commitment Letter as follows**:

a.)    The failure to make payments under the loan when due.
. . . .

**An event of default for purposes of the cross-collateralization, cross default and releases shall remain as described in Paragraph 9 of the Commitment Letter.**

**5.    The terms and conditions of this Addendum to Commitment Letter, along with terms and conditions of the said Commitment Letter not inconsistent herewith, shall remain in full force and effect and be binding on all of the Parties hereto and the same shall survive the closing of the CCT Reserve, LLC loan**.

(JA 272-73) (emphasis added in part).  The addendum reinforces that an "event of default" under the loan documents (and hence the guaranties) is subject to the commitment letter's requirement that CresCom give ten days written notice of default to Terry.  It also reiterates that the commitment letter's terms—including the notice of default requirement—"survive[d]" the loan closing and continued to be "binding on all of the Parties hereto," including CresCom and Terry.

On June 25, 2009, CresCom, CCT, and Terry also executed the Loan

Amendment.  This agreement, which CresCom drafted, provides in pertinent part:

> WHEREAS, simultaneous with the execution of this Agreement, Lender is loaning [CCT] the sum of $750,000.00 pursuant to its commercial loan #.....3572 (the "New Loan") . . .;
>
> . . . .
>
> WHEREAS, Lender's condition in making the above mentioned Loan is that Borrowers agree to enhance the Lender's position by acknowledging and agreeing to the addition of a Cross Default provision in all of the Previous Loans;
>
> . . . .
>
> 1.      **The Borrowers each specifically acknowledge and agree that they are related to each other by common ownership and management and as a result will benefit by the New Loan to be made for the purpose of making payments of interest, taxes and other costs and expenses in connection with the Previous Loans and the New Loan.**
>
> 2.      It is agree[d] that in the event of a payment default on either the Previous Loans or the New Loan, at the discretion of the Lender and without the need to give notice of any kind, the Lender may declare some or all of the Previous Loans or the New Loan in default and require the immediate repayment of those loans declared in default.  **In the event Lender determines to exercise its rights hereunder it shall give Borrowers no less than ten (10) days written notice from the date of the receipt of the notice to cure the default.**  Under all circumstances, notice shall be deemed received no later than 5:00 PM on the second business day after it is properly sent.
>
> . . . .
>
> 5.      **It is agreed that any notices that are to be sent to any of the parties regarding a default under the terms set forth herein the notices shall be given by certified mail, return receipt requested, recognized**

**overnight carrier such as UPS or FEDEX, by hand deliver[y] or some other method that provides proof of deliver[y].**

        **For notices to any Borrower:  Edward L. Terry**
        **2197 Canton Rd., Suite 210**
        **Marietta, GA 30066**

. . . .

    6.     Except as Modified herein, the terms and conditions of the New Loan and Previous Loans shall remain in full force and effect.

(JA 311-12) (emphasis added).  Paragraphs 2 and 5 mandate that CresCom "*shall* give" Terry at least ten days written notice of default and the notice "*shall* be given" to Terry at his office address in Marietta, Georgia, by "certified mail . . . or some other method that provides proof of deliver[y]." *Id.* (emphasis added).[4]  Importantly, these provisions were drafted such that CresCom is required to address and deliver the notice of default *to Terry individually*.

Considering the commitment letter, addendum, and Loan Amendment together and with any ambiguities, doubts, or uncertainties therein construed "most strongly" against CresCom—the drafter—the contracts mandate that CresCom provide Terry with ten days written notice of default.  The uncontroverted evidence shows that CresCom never gave Terry ten days written notice of default in adherence to the

---

[4] Under rules of contract interpretation, the use of the term "shall" indicates a command or a mandatory requirement. *McGee v. Patterson*, A13A0038, 2013 WL 3658821, *6 (Ga. Ct. App. July 16, 2013); *Cumrine v. IPG, Inc.*, 367 S.E.2d 581,

contract terms.  Under Georgia law, which governs CresCom's claims against Terry, the failure to provide a party with notice of default as required by the contract discharges the party's contractual obligations as a matter of law. *In re Colony Square Co.,* 843 F.2d 479, 481 (11th Cir. 1988); *Orkin Exterminating Co. v. Stevens,* 203 S.E.2d 587, 593 (Ga. Ct. App. 1973).  When a contract requires that "notice" be given in a particular manner, failure to give notice in "strict" compliance with the prescribed manner bars an action for breach of the contract. *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 903-04 (11th Cir. 2000); *Buffalo Ins. Co. v. Star Photo Finishing Co.*, 172 S.E.2d 159, 163 (Ga. Ct. App. 1969); *Atkinson v. Cook*, 518 S.E.2d 413 (Ga. 1999); *In re Colony Square Co.*, 843 F.2d at 481; *see also Columbus Container, Inc. v. Logility Inc.*, 2002 WL 449790 (S.D. Ind. Feb. 7, 2002) (applying Georgia law) (granting summary judgment as to breach of contract claim because party failed to comply with notice and cure provision).

In *Alliance Metals, Inc.*, for example, the parties' contract stated:

(D) Paragraph 10(B) above shall be null and void in the event Employee is terminated by Employer without cause or if the Employer materially breaches the terms of this agreement *and fails to cure any such material breach within thirty (30) days after notice from the Employee specifying the breach and requiring it to be cured*. . . . .

*All notices, requests, and other communications to any party shall be in writing and sufficient if delivered personally, sent by registered or*

_____

584 (Ga. Ct. App. 1988); *Alimenta Processing Corp. v. S. Georgia Pecan Co.*, 364 S.E.2d 84, 84-85 (Ga. Ct. App. 1987).

> *certified mail, postage prepaid, return receipt requested, or by*
> *nationally recognized overnight courier service, addressed as follows*:
>
> If to the Employer, at:
> Alliance Metals, Inc. of Atlanta
> [address omitted]
>
> With a copy to:
> Barry Buckley, Esquire
> [address omitted]

*Alliance Metals, Inc.*, 222 F.3d at 902-04 (emphasis added). The employee (Hinely) claimed that his employer (Alliance Metals) breached the contract. The Eleventh Circuit disagreed because the employee had failed to give notice of default and an opportunity to cure as required by the contract. The Court held:

> Hinely failed to demonstrate that he sent written notice to [Alliance Metals] and Buckley specifying a material breach and requiring it to be cured. The May 31, 1995, letter was addressed and sent only to Buckley [Alliance Metals' attorney] and not to [Alliance Metals]. That letter read:
>
> > Pursuant to paragraph (5)(b) of the Employment Agreement between Alliance Metals and [Hinely], Alliance is to provide [Hinely] with copies of all information and materials he requires to complete his review of Alliance's calculation of Incentive Compensation. Robert's accountant, Barry Franklin, has yet to receive any response to his February 9, 1995, request for information from Mr. Gerald G. Storch, Alliance's accountant, in connection with Robert's review of the calculation of Incentive Compensation. Additionally, I have not received any response to my phone calls and letters to you regarding this matter.
> >
> > I would greatly appreciate it if you would favor me with a response as to the status of this matter as soon as possible.

- 7 -

> Even if the letter had been sent to [Alliance Metals] in addition to Buckley, it stops short of "specifying the breach and requiring it to be cured" as is necessary under the notice requirement of the non-competition provision. We conclude that Hinely failed to demonstrate that he gave notice of any of the alleged breaches sufficient to satisfy the requirement of notice as that term is defined in the employment contract.

*Id.* at 903-04; *see also Abecassis v. Eugene M. Cummings, P.C.*, 2010 WL 9452252 (S.D. Fla. June 3, 2010), *aff'd*, 467 F. App'x 809 (11th Cir. 2012) (dismissing breach of contract claim when party failed to provide notice of alleged breach and opportunity to cure as required by terms of contract).

CresCom's feckless attempt to salvage its position by citing to letters that its counsel purportedly mailed to Terry on June 14, 2011, fails for several reasons. (JA 322-42). First, none of the letters assert the loans are in default. At the time the letters were purportedly sent, the loans had not yet reached maturity and were not in default. Second, none of the letters purport to give at least "ten (10) days written notice from the date of the receipt of the notice to cure [any alleged] default." Rather, each letter demands that full payment be made within a mere four days of the date of the letter, regardless of when the letter was received or delivered. Third, none of the letters are addressed to Terry's correct mailing address in Marietta, Georgia. Instead, CresCom's counsel addressed most of the letters to old addresses that Terry no longer used. (JA 130-31). Fourth, CresCom purportedly sent the letters by regular mail, not by

"certified mail or . . . some other method that provides proof of deliver[y]" as required by the Loan Amendment.  Finally, Terry did not receive the letters. (JA 132).[5]

Finally, CresCom makes the unsupported assertion that Terry was not "prejudiced" by its failure to provide notice of default and an opportunity to cure. *See* CresCom Opening Brief p. 25.  CresCom's brief does not explain the basis for this assertion, thus leaving Terry and this Court to guess.  If CresCom is intimating that its failure to provide the required written notice of default should be excused on the grounds that Terry was aware the loans had matured or because it would have been futile to give notice to Terry, then CresCom's arguments are meritless.  The fact the loans had matured does not mean CresCom declared them in default.  The contracts state that CresCom "may declare" the loans in default in the event of a payment default, but that "[i]n the event [CresCom] determines to exercise its rights hereunder it shall give Borrowers no less than ten (10) days written notice from the date of the

---

[5] Georgia law provides that "where notice is required to be given, it is generally held, in the absence of anything appearing to the contrary, that the notice is not complete until it is received; and that, while mailing a notice duly directed and stamped may furnish presumptive evidence of its receipt, it does not alone constitute notice." *Menke v. First Nat. Bank of Atlanta*, 309 S.E.2d 835, 837 (Ga. Ct. App. 1983).  "[W]here notice is attempted to be effectuated by mail, there must be proof that the notice was received before the sender's action, which must be based upon the giving of 'notice,' is authorized." *Id.*  Moreover, "[w]hile proof that [notices] were mailed raise[s] a presumption that the defendant received them this presumption is a rebuttable one and is entirely overcome by the uncontradicted evidence of the defendant that [he] did not receive the notices." *Id.*; *W.T. Rawleigh*

- 9 -

receipt of the notice to cure the default." (JA 311-12 ¶2); *see also* (JA 266 ¶9) (CresCom "at its option and ten (10) days written notice may declare all of the loans in default").

Even if CresCom had verbally notified Terry that the loans are in default and he had ten days to cure the default—which it did not—such notice is insufficient. *Orkin Exterminating Co.,* 203 S.E.2d at 593 (Where contract provided for written notice of claim for breach of guaranty, failure to give notice was bar to maintenance of a successful cause of action on the contract, even though notice was given by telephone.); *Pillar Dev., Inc. v. Fuqua Const. Co., Inc.*, 645 S.E.2d 64, 66 (Ga. Ct. App. 2007) ("Where a contract contains provisions requiring written notice of a claim for breach, '[t]he failure to give notice as required or to show waiver by [the party entitled to notice] is an independent bar to the maintenance of a successful cause of action on the contract.' Moreover, oral notice is not sufficient where written notice is required."); *Corbin v. Gulf Ins. Co.*, 187 S.E.2d 312, 315 (Ga. Ct. App. 1972) ("In the absence of conduct amounting to waiver or estoppel, oral notice is not sufficient where written notice is required.").

Additionally, any claim by CresCom that its compliance with the notice requirement would have been futile is conjecture. *See*, *e.g.*, *Columbus Container, Inc.*,

---

*Med. Co. v. Burney*, 102 S.E. 358, 359 (Ga. Ct. App. 1920); *Roland v. Shelton*, 127 S.E.2d 497, 500 (Ga. Ct. App. 1962).

2002 WL 449790 at *6-7 (applying Georgia law) (rejecting plaintiff's argument that "no amount of notice would have been sufficient to allow [the defendant] to cure its default" because "it would have been impossible for [the defendant] to cure its default" when the plaintiff's claim was "based entirely on speculation, not fact").  Under Georgia law, "futility" excuses the failure to provide notice of default and opportunity to cure "only where the party who argues it was entitled to notice had itself already terminated the contract," *Asplundh Tree Expert Co. v. Emeritis LLC*, 2006 WL 1794744, *2 (N.D. Ga. June 27, 2006), or had "disavowed any further performance under the contract prior to the time the other party should have given notice." *Alliance Metals, Inc.*, 222 F.3d at 906; *Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 278 (11th Cir. 1998).  CresCom does not allege that Terry terminated or disavowed the contracts, thus CresCom's arguments of futility or lack of prejudice are meaningless.

## II.   TERRY IS AN INTENDED THIRD PARTY BENEFICIARY OF THE NOTICE OF DEFAULT PROVISION.

CresCom argues that Terry could not be an intended third party beneficiary of the contractual provisions requiring notice of default and an opportunity to cure because "he fails to allege that he made any attempt to negotiate the terms of the Guaranties on his own, individual behalf." *See* CresCom Opening Brief p. 25.  Not only is CresCom's argument devoid of any legal support, but it is refuted by the record.

- 11 -

The record shows that because CresCom imposed a new cross-default and cross-collateralization provision as part of the new loan, Terry specifically negotiated the notice of default provision into the agreements with CresCom for the purpose of ensuring that he was given advance notice of a default under the loan documents and an opportunity to cure same before CresCom sought to cross-default the loans and foreclose on all of the properties. (JA 162-63 ¶ 33; 266 ¶9).  As discussed above, the contracts required that CresCom give notice of default to Terry individually.  The evidence shows that Terry personally negotiated for the notice of default provision and the language was included for his benefit.

CresCom also criticizes Terry's citation to this Court's unpublished opinion in *Youmans v. Prudential Ins. Co. of Am.*, 977 F.2d 575 (4th Cir. 1992). *See* CresCom Opening Brief p. 25 & n.6.  While unpublished opinions of the Fourth Circuit do not constitute binding precedent, they are entitled to "the weight they generate by the persuasiveness of their reasoning." *Hupman v. Cook*, 640 F.2d 497, 501 (4th Cir. 1981); *see Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 487 n.5 (D.S.C. 1993) (quoting *Hupman*); *see also Martin v. Clemson University*, 654 F.Supp.2d 410, 417 (D.S.C. 2009) ("Although Plaintiff is correct that unpublished opinions do not constitute binding precedence, unpublished opinions can be persuasive when they address questions currently before the Court."); *Fitchett v. County of Horry*, 2011 WL 4435756, *7 (D.S.C. 2011) ("While this unpublished opinion may not be

binding precedent, it certainly has persuasive value, especially given that it addresses the same statutes and the same arguments . . . as those raised in the present case.").

Terry has never argued that *Youmans* is a binding precedent. Rather, he argues that the case is persuasive because it involves issues that are similar to the present case. In *Youmans*, this Court held that "Youmans is correct that he is an intended third party beneficiary" of a provision in a loan commitment letter between two other parties requiring notice of default and an opportunity to cure even though Youmans was not a party to the contract because "Youmans negotiated for the provision, and the language was clearly included for his benefit." 977 F.2d 575, *2-4; *see also In re Buckhead Oil Co., Inc.*, 454 B.R. 242, 250 (Bankr. N.D. Ga. 2011) (borrower was third party beneficiary of waiver provision in guaranty agreement which stated that guarantors will have "no claim against the Borrower"). In the present case, because Terry was a guarantor on the loans made to CCT and faced personal liability if the loans went into default, he personally negotiated for the notice of default provision and that language was specifically included in the loan documents for his benefit.

## III.   THE DISTRICT COURT IMPROPERLY ENTERED SUMMARY JUDGMENT IN CRESCOM'S FAVOR WITH RESPECT TO DAMAGES BECAUSE THE EVIDENCE SHOWED THAT THE DEBT WAS SATISFIED IN FULL WHEN CCT CONVEYED COLLATERAL TO CRESCOM PURSUANT TO ITS BANKRUPTCY PLAN.

CresCom concedes that "[a]s a result of and within [CCT's] bankruptcy proceeding, property was conveyed to CresCom in lieu of foreclosure, and the

outstanding obligation of Terry under the Guaranties" should be reduced by the value of the properties it received. *See* CresCom Opening Brief p. 21. CresCom asserts that "[t]he issue of valuation . . . is ultimately moot" because the bankruptcy court determined the value of the properties and CCT deeded those properties to CresCom in accordance with the bankruptcy court's Orders. *Id.* p. 27. CresCom simply ignores the fact that the bankruptcy court's valuations are not binding on Terry in this case.

As discussed in Terry's Brief, the *only* evidence that CresCom presented to the district court concerning the value of the properties it received in CCT's bankruptcy proceedings consisted of CresCom's internal records referring to its own appraisals for the properties. Those appraisals valued the properties at amounts exceeding the outstanding debt owed to CresCom. Based on CresCom's internal valuations, the debt was satisfied in full once CCT conveyed the properties to CresCom.

For the first time on appeal, CresCom argues that its own internal valuations should be disregarded because they are based on outdated appraisals. *See* CresCom Opening Brief p. 27. This Court has steadfastly adhered to the precept that it shall not address issues raised for the first time on appeal. *See, e.g., In re Under Seal*, 2014 WL 1465749, *6 (4th Cir. Apr. 16, 2014) ("Our settled rule is simple: '[a]bsent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal.'" (citation omitted)); *Muth v. United States,* 1 F.3d 246, 250 (4th Cir. 1993) (stating that

- 14 -

issues raised for first time on appeal will not be considered absent exceptional circumstances).  Thus CresCom's belated argument should not be considered.

Additionally, CresCom presented no evidence showing that its internal valuations are outdated or invalid.[6]  "Real property values tend to increase with the passage of time." *Recanzone v. Nevada Tax Commission*, 550 P.2d 401, 403 (Nev. 1976).  The age of the appraisals is simply a factor to be considered.  It does not mean the valuations are irrelevant. *Fulstone v. Fulstone*, 2005 WL 2211268, *5 (Cal. Ct. App. 2005) (holding that reliance upon appraisal generated several years before trial was not abuse of discretion when there was no evidence the appraisal was no longer viable due to the passage of time); *Milevoj v. Milevoj*, 201 A.D.2d 267, 267 (N.Y. App. Div. 1994) (holding it was not improper to rely upon appraisal prepared more than a year before trial when no credible evidence was introduced to show that it had become outdated by the passage of time).  CresCom obtained the appraisals before it initiated this litigation against Terry and became motivated to minimize the value of its

---

[6] CresCom's brief claims that its appraisals occurred in 2006. *See* CresCom Opening Brief p. 27.  However, the records in CresCom's loan file (which are dated August 8, 2011) show that the Maybank tract was "last appraised" on July 16, 2009 at $1.45 million (JA 650-51); the Baker tract was "last appraised" on July 16, 2009 at $1.175 million (JA 657); the Parker tract was "last appraised" on July 14, 2009 at $951,000.00 (JA 663-64); and the Coker's Commons lots were "last appraised" on May 20, 2009 at $1.175 million (JA 670).  The appraisals occurred *after* the well-known implosion of the housing market and financial upheaval in 2008.  Nothing in the records suggests the appraised values are no longer valid because of the passage of time.

- 15 -

collateral—which it was forced to accept in the bankruptcy proceedings—to maximize its potential deficiency judgment against Terry.

Instead of using CresCom's own internal valuations—which were the *only* evidence of value proffered by CresCom—or conducting an evidentiary hearing to determine the value of the properties conveyed by CCT, the district court simply accepted the significantly lower valuations for the properties "as calculated by the Bankruptcy Court" because CresCom stipulated to their use in the district court. (JA 743); CresCom Supp. Memo. filed 10.11.13 at p.5 [Docket 64]. CresCom arrogated to itself the power to choose which property valuations are binding on Terry. The district court disregarded the fact that Terry never stipulated to those valuations, was not a party to the bankruptcy proceedings, and the bankruptcy court's findings are not binding on him. CresCom did not claim in the district court—and does not argue in its brief—that the bankruptcy court's Orders are binding on Terry and the district court did not so hold.

CresCom does not get to unilaterally choose to disregard its own appraised valuations and to stipulate to the use of the bankruptcy court's lower valuations so as to obtain a windfall from Terry. Instead, taking the evidence in the light most favorable to Terry, CresCom's debt was fully satisfied once CCT conveyed the properties to CresCom. The district court erred by awarding *any* damages to CresCom at the summary judgment stage.

CresCom argues that Terry could have presented evidence to prove the valuations of the properties. *See* CresCom Opening Brief p. 27. However, CresCom had the burden of proving the absence of a genuine issue concerning the value of the properties it received from CCT and the amount of the outstanding debt owed by Terry. *VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC*, 2014 WL 169940, \*2 (4th Cir. Jan. 16, 2014) ("The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."). Because CresCom failed to present any evidence of the value of the properties it received other than its own internal appraisals, which showed the debt was fully satisfied, it was not Terry's burden to present any evidence to defeat CresCom's summary judgment motion on that issue.

## IV.   AS A PARTY TO THE PRIOR BANKRUPTCY PROCEEDINGS, CRESCOM IS BOUND BY THE BANKRUPTCY COURT'S UNAPPEALED FINDING INVOLVING THE UNSATISFIED AMOUNT OF CRESCOM'S CLAIM.

As discussed in Terry's Brief, the bankruptcy court determined that the outstanding indebtedness owed to CresCom is $1,121,029.00 after crediting the value of the collateral which CresCom received from CCT. (JA 428-35). The bankruptcy court's finding is binding on CresCom—which fully participated in the bankruptcy proceedings and did not appeal from that court's rulings—under the express terms of the bankruptcy court's orders and by operation of 11 U.S.C. § 1141 of the Bankruptcy

Code and common-law principles of collateral estoppel and *res judicata*. Because of the bankruptcy court's rulings, the *maximum* amount Terry could owe to CresCom is $1,121,029.00.

In response, CresCom again resorts to 11 U.S.C. § 524(e) to assert that "a discharge of a debtor in bankruptcy does not discharge the obligations of a guarantor." *See* CresCom Opening Brief p. 22. However, CresCom fails to directly respond to Terry's argument that § 524(e) is irrelevant to this case because Terry does not contend that his liability was reduced due to CCT's discharge in bankruptcy. The best that CresCom could muster is a bare contention that "Terry's distinction with regard to the discharge of debt versus the reduction of debt is merely obfuscation when applied to the facts of this case." *See* CresCom Opening Brief p. 23. CresCom does not explain how that is the case.

As shown in Terry's brief, § 524(e) means simply that a bankruptcy court's discharge of a debtor does not *by itself* relieve co-debtors or non-debtors of liability and that co-debtors and non-debtors are not *automatically* released from the debt or guaranty simply because of the debtor's discharge in bankruptcy. *In re Chateaugay Corp.*, 167 B.R. 776, 780 (S.D.N.Y. 1994); *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 656 (7th Cir. 2008); *In re Digital Impact, Inc.*, 223 B.R. 1, 10 (Bankr. N.D. Okla. 1998); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007); *In re Transit Grp., Inc.*, 286 B.R. 811, 816 (Bankr. M.D. Fla. 2002). However, § 524(e)

- 18 -

does not preclude the bankruptcy court from finding the creditor's debt has been *partially or wholly satisfied* because of the debtor's bankruptcy plan, which also acts to reduce or eliminate the liability of a non-debtor guarantor. *In re Rosewood at Providence, LLC*, 470 B.R. 619, 628 (Bankr. M.D. Ga. 2011); *Weaver v. Texas Capital Bank N.A.*, 3:09-CV-380-M, 2010 WL 3119397 (N.D. Tex. Aug. 5, 2010), *rev'd on other grounds*, 660 F.3d 900 (5th Cir. 2011); *In re Park Forest Dev. Corp.*, 197 B.R. 388, 392 (Bankr. N.D. Ga. 1996). The courts in those cases acknowledged the distinction between the argument that the creditor's debt was reduced or eliminated simply because of the debtor's discharge in bankruptcy and the argument that the debt was partially or fully satisfied because of payments or transfers of property made to the creditor as part of the debtor's bankruptcy plan which also operated to reduce or eliminate a non-debtor's liability.

In this case, the bankruptcy court's orders do not violate § 524(e). The bankruptcy court did not hold that CresCom's debt was reduced simply because of CCT's discharge in bankruptcy, which would implicate § 524(e). Instead, the bankruptcy court held the debt was partially satisfied because of CCT's conveyance of collateral to CresCom pursuant to the confirmed bankruptcy plan, which does not implicate § 524(e). The bankruptcy court determined the amount of CresCom's debt, required the conveyance of collateral to CresCom, applied the collateral's value in

- 19 -

partial satisfaction of the debt, and determined the portion of the debt which remains outstanding or unsatisfied after crediting the collateral.[7]

CresCom cites no law holding that § 524(e) bars the bankruptcy court from determining the amount of a creditor's debt left unsatisfied once payments are made or property is transferred to the creditor as part of the debtor's confirmed bankruptcy plan. The fact that CCT's "dirt for debt" plan caused a partial or full satisfaction of CresCom's claim does not implicate § 524(e) because CCT's discharge in bankruptcy *by itself* had no effect on the debt. It was CCT's conveyance of valuable property to CresCom—not CCT's discharge in bankruptcy—which reduced the debt to $1,121,029.00. Section 524(e) is irrelevant to this case.

## V.   CRESCOM IS PROHIBITED FROM RECOVERING THE "DEFAULT" RATE OF INTEREST OR LATE FEES.

CresCom states in conclusory fashion that "once payment was late," it had the right under the loans to *automatically* assess (1) "default" interest at 11% per annum for each loan beginning on the loan maturity date and (2) "late fees" equaling 5% of the entire loan principal. *See* CresCom Opening Brief p. 28. CresCom fails to address Terry's argument that the "default" interest rate is inapplicable because CresCom never

---

[7] The bankruptcy court necessarily determined the outstanding amount of the debt after crediting the collateral because the bankruptcy plan provides that the outstanding amount shall be treated as a general unsecured claim and requires payments to be made to CresCom in satisfaction of this unsecured claim. (JA 407 ¶4.03(d); 409 ¶4.09).

provided notice of default to Terry or CCT as required by the loan documents, except its self-serving claim that "no further notice or right to cure" was necessary "to either the borrowers or Terry" once payment was late. *Id.* CresCom also ignores Terry's argument that the "late fees" awarded by the district court are not supported by the terms of the loan documents and constitute an unenforceable penalty. *Id.*

Terry's Brief sets forth a detailed analysis of the actual terms contained in the loan documents and demonstrates that the "default" interest rate does not automatically apply simply because the loans reached maturity. Instead, the promissory notes for the four loans contain paragraphs entitled "Post Maturity Rate," which expressly state that the same interest rate "in effect before maturity" will continue post maturity. (JA 188-201, 217-27, 240-49, 275). The loan agreements also permit—but do not require—CresCom to charge a "default" interest rate *if* there was a payment failure *and if* CresCom decided to declare the loans in default. Those agreements state that CresCom "may declare" the loans in default based on a payment failure, but that "[i]n the event [CresCom] determines to exercise its rights hereunder it shall give Borrowers no less than ten (10) days written notice from the date of the receipt of the notice to cure the default." (JA 311-12 ¶2); *see also* (JA 266 ¶9) (CresCom "at its option and ten (10) days written notice may declare all of the loans in default"). The fact that CresCom *may* declare the loans in default due to a payment failure does not mean the loans were

- 21 -

automatically in default when they reached maturity. The fact the loans had matured does not mean CresCom had declared them in default.

CresCom never gave notice of default to Terry or CCT and never notified them it was charging the default interest rate. Because CresCom never exercised its option to declare the loans in default, the default interest rate is inapplicable. *Beal Bank S.S.B. v. Krock*, 201 F.3d 426, at *2 (1st Cir. 2000); *In re Crystal Properties, Ltd., L.P.*, 268 F.3d 743, 750 (9th Cir. 2001); *JCC Dev. Corp. v. Levy*, 146 Cal. Rptr. 3d 635, 643-45 (Cal. Ct. App. 2012); *In re Potts*, 2013 WL 5508429, *6 (Bankr. D. Colo. Oct. 3, 2013); *see also Eckert Realty Corp. v. Eckert*, 941 So. 2d 426, 429 (Fla. Dist. Ct. App. 4th Dist. 2006) ("The note called for default interest to be payable from the 'due date.' Thus, a declaration of default was necessary to trigger the obligation to pay interest at the default rate."); *In re Lichtin/Wade, LLC*, 2012 WL 3260287, *5 (Bankr. E.D.N.C. Aug. 8, 2012) (lender could not retroactively charge default interest under promissory notes for period prior to lender's notice of default).

Furthermore, as thoroughly explained in Terry's Brief, the express terms of the loan documents make clear that, if a monthly "interest only" installment payment was not made within 10 days of its due date, Terry agreed to pay a late charge equaling 5% of the overdue interest payment. By the plain terms of the agreements, the 5% late fee is applicable only to the monthly interest payments due under the loan documents, not the entire principal amount due at loan maturity. Numerous other courts have held that

- 22 -

"late fee" provisions identical to CresCom's do not apply to the entire principal amount at loan maturity, but apply only to the installment payments. *See Ford v. Staats*, 1998 WL 1184108, *6 (Mass. Super. Feb. 17, 1998); *Trustco Bank New York v. 37 Clark St., Inc.*, 599 N.Y.S.2d 404, 405 (N.Y. Sup. Ct. 1993); *Art Country Squire, L.L.C. v. Inland Mortgage Corp.*, 745 N.E.2d 885, 889-90 (Ind. Ct. App. 2001); *Poseidon Dev., Inc. v. Woodland Lane Estates, LLC*, 62 Cal. Rptr. 3d 59, 66 (Cal. Ct. App. 2007).

Finally, even assuming *arguendo* the loan documents do allow the "late fees" sought by CresCom, CresCom completely ignores and does not even attempt to respond to Terry's argument that such fees constitute unenforceable penalties. As demonstrated in Terry's Brief, the "late fees" fail to satisfy any prong of the "tripartite inquiry" used for determining whether a provision constitutes liquidated damages or an unenforceable penalty. *Southeastern Land Fund v. Real Estate World*, 227 S.E.2d 340, 343 (Ga. 1976). Numerous other courts have invalidated late fee provisions indistinguishable from CresCom's on the grounds that they constituted unenforceable penalties. *See In re Mkt. Ctr. E. Retail Prop., Inc.*, 433 B.R. 335, 363 (Bankr. D.N.M. 2010); *Heath v. Y.S. Mortgage, LLC*, 2006 WL 488642, at *5 (S.D. Ill. Feb. 28, 2006); *Fleet Bank of Massachusetts, N.A. v. One-O-Six Realty, Inc.*, 1995 WL 389862, *3 (Mass. Super. Jan. 17, 1995); *Garcia v. Canan*, 851 F. Supp. 327, 328 (N.D. Ill. 1994); *Matter of Timberline Prop. Dev., Inc.*, 136 B.R. 382, 387 (Bankr. D.N.J. 1992); *Home*

*Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, 2012 WL 1078886, *6-7 (E.D.N.Y.

Mar. 30, 2012).

## **CONCLUSION**

For the foregoing reasons, Terry requests this Court to reverse the district court's

Order granting summary judgment in CresCom's favor and to remand this case for

further proceedings accordingly.

This 29th day of May, 2014.

ROSEN, ROSEN & HAGOOD, LLC

*/s/ Daniel F. Blanchard, III*
Richard S. Rosen
rsrosen@rrhlawfirm.com
Daniel F. Blanchard, III
dblanchard@rrhlawfirm.com
151 Meeting Street, Suite 400
Charleston, SC  29401
(843) 577-6726 telephone
(843) 724-8036 facsimile
ATTORNEYS FOR EDWARD L. TERRY

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-2467        **Caption:** CresCom Bank v. Edward L. Terry

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains ____6,210____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using
   MS Word _____ [*identify word processing program*] in
   Times New Roman, 14 point _____ [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Daniel F. Blanchard, III _____

Attorney for Edward L. Terry _____

Dated: May 29, 2014 _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2014, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF System, which will send notice of such filing to

the following registered users:

Charles S. Altman, Esquire
Meredith L. Coker, Esquire
Altman & Coker, LLC
575 King Street, Suite A
Charleston, SC 29403

                                    ROSEN, ROSEN & HAGOOD, LLC

                                    */s/ Daniel F. Blanchard, III*
                                    Daniel F. Blanchard, III
                                    dblanchard@rrhlawfirm.com
                                    151 Meeting Street, Suite 400
                                    Charleston, SC  29401
                                    (843) 577-6726 telephone
                                    (843) 724-8036 facsimile
                                    ATTORNEYS FOR EDWARD L. TERRY